IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00838-KLM

OSVALDO BARRIENTOS-SANABRIA,

      Plaintiff,

v.

EDWARD HOLTE, in his individual and official capacity,
ROD FENSKE, in his official capacity,
ANTONIO LOBATO, in his individual and official capacity, and
AARON D'MIZE, in his individual and official capacity,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' ***Daubert* Motion to Preclude John**

**Koziol Testimony** [Docket No. 66; Filed June 28, 2012] (the "Motion").  On July 20, 2012,

Plaintiff filed a Response [#71] in opposition to the Motion.  On July 31, 2012, Defendants

filed a Reply [#72].  The Court has reviewed the pleadings, the exhibits, the entire case file

and the applicable law, and is fully advised in the premises.  For the reasons set forth

below, the Motion [#66] is **GRANTED.**

### I. Summary of the Case

      On October 11, 2009, Plaintiff was a passenger in his wife's vehicle while she was

driving in Lake County, Colorado.  *Second Am. Compl.* [#31] at 12; *Final Pretrial Order*

[#69] at 3.  Plaintiff's wife was stopped for speeding by Defendant Deputy Antonio Lobato

("Deputy Lobato").  [#69] at 3.  Deputy Lobato arrested Plaintiff and charged him with

obstruction of a peace officer, resisting arrest, and having an open container.  *Id.* Defendant Lieutenant Aaron D'Mize ("Lieutenant D'Mize") was in the vicinity at the time the arrest was made and, although off-duty, assisted Deputy Lobato in the arrest. [#31] at 12. Based on this incident, Plaintiff alleges three causes of action.  First, he alleges that the officers used excessive force in violation of the Fourth Amendment. [#31] at 13-14. Second, Plaintiff alleges that he was unlawfully seized in violation of the Fourth Amendment. [#31] at 15-16.  Third, Plaintiff alleges that the First Amendment was violated when the officers arrested him because they perceived him to be verbally uncooperative. [#31] at 16-17.

Plaintiff offers the expert opinion of John Koziol ("Koziol") to testify as a law enforcement expert.  According to his report, Mr. Koziol will testify that Plaintiff was "agitated" at the traffic stop and was "likely impaired or under the influence of alcohol, drugs, or both, and distracting the Deputy from his communications with the driver." *Report of Koziol* [#66-1] at 4.  Mr. Koziol asserts that Deputy Lobato should have ignored Plaintiff, in spite of his interference, and asked Plaintiff's wife to step out of the car.  *Id.* at 4-7.  He also asserts that both Deputy Lobato and Lieutenant D'Mize should have employed de-escalation techniques.  *Id.*  He concludes, among other things, that the officers' actions were "unreasonable and grossly excessive" and that the force experienced by Plaintiff at the hands of the officers was sufficient to cause "excruciating pain, injury and humiliation." *Id.* at 9.

Defendants assert multiple grounds for excluding Mr. Koziol's testimony pursuant to Fed. R. Evid. 702.  First, Defendants argue that Mr. Koziol is unqualified to serve as an expert in law enforcement procedure.  *Motion* [#66] at 4-5.  Second, Defendants argue that

Mr. Koziol's opinions are unreliable.  *Id.* at 5-13.  Third, Defendants argue that Mr. Koziol's

opinions are irrelevant.  *Id.* at 13-14.

Plaintiff counters Defendants' arguments by asserting, in a nutshell, that they are not

a basis for excluding Mr. Koziol's testimony, as the "jury must decide what weight Mr.

Koziol's testimony should be given, like all other expert and lay testimony."  *Response* [#71]

at 2-3.

## II.  Analysis

### A.    Legal Standards

"Admission at trial of expert testimony is governed by Fed. R. Evid. 702, which

imposes on the district court a gatekeeper function to 'ensure that any and all scientific

testimony or evidence admitted is not only relevant, but reliable.'"  *United States v.*

*Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  Rule 702 provides the foundational

requirements for admission of expert opinions:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training or education may testify in the form of an
> opinion or otherwise if:
> (a)    the expert's scientific, technical or other specialized knowledge
>        will help the trier of fact to understand the evidence or to
>        determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods;
>        and
> (d)    the expert has reliably applied the principles and methods to
>        the facts of the case.

The district court's discretion in admitting or excluding expert testimony under *Daubert* is

broad, "both in deciding how to assess an expert's reliability, including what procedures to

utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003).

"[B]efore admitting expert testimony, the trial court must make certain findings to fulfill its gatekeeper role under Rule 702." *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011).  In deciding whether an expert opinion is admissible, the district court conducts a two-step analysis: (1) the court must determine whether the expert is qualified to give the proffered opinion, and (2) the Court must examine whether the opinion is reliable.  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

Regarding qualifications, "the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009) (quoting Fed. R. Evid. 702).  Any one of these qualifications can be sufficient to support a finding that an expert is qualified.  *See* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.[1]  However, in some fields, experience alone is the "predominant, if not sole, basis for a great deal of reliable expert testimony."  *Id.*  "Acceptance or rejection of an expert witness's qualifications is a matter within the discretion of the trial court."  *United States v. Dysart*, 705 F.2d 1247, 1251 (10th Cir. 1983).  "Neither Rule 702 nor any other rule or precedent ... sets forth a specific method by which the trial judge must determine the qualification of an expert."  *Id.*

Rule 702 also requires that the means or method by which the testimony or opinion is derived be reliable.  As such, as referenced above, the Rule sets out three specific

---

[1] Because the witness' qualifications must relate to the opinions offered in the present case, the fact that the witness has given expert testimony in other cases is not relevant unless the testimony was of the same nature using the same methodology.

requirements to establish reliability: (1) a showing that the "testimony is based upon sufficient facts or data," (2) a showing that "the testimony is the product of reliable principles and methods," and (3) a showing that "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(b)-(d).  The court reaches this second step of the analysis only if it determines that a witness is qualified. *See Yeley-Davis*, 632 F.3d at 684.  This step of the analysis "requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge*, 328 F.3d at 1221.

Finally, even if an expert is deemed qualified and his or her opinions are considered reliable, admissibility still requires a determination that the opinions are relevant.  That is, the Court must consider "whether expert testimony . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert*, 509 U.S. at 591 (citation omitted).  Courts have routinely excluded expert testimony that was based on nothing more than speculation.  *See, e.g., Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Assoc., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (expert testimony excluded as "tentative and speculative").  However, "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong facts such as time or surprise favoring exclusions."  *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) (quoting *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

The proponent of expert testimony bears the burden of proving the foundational

requirements of Rule 702 by a preponderance of the evidence.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 592 n.10).   The proponent is not required to prove that the opinion is indisputably correct or even that the expert's theory is generally accepted in the scientific community.  *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999).   Instead, the proponent must show that the witness has sufficient expertise to choose and apply a methodology, that the methodology was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied. *Id.*; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222.   The burden on the proponent of the expert testimony is significant, as any inadequacy in the proof on any of Rule 702's elements may render the entire opinion inadmissible.  *See Mitchell*, 165 F.3d at 782.

## B.   Application

The Court has reviewed the evidence provided by the parties with the briefing of the instant Motion, including Mr. Koziol's expert report.[2]   Based on the information provided, the Court concludes that Plaintiff has failed to establish that Mr. Koziol is qualified to provide expert testimony on law enforcement procedures and use of force.

Defendants argue that Mr. Koziol has insufficient education and experience to serve as an expert on the issues for which Plaintiff is offering his testimony. [#66 at 4-5].   They point out that he has only a two-year associates degree in "general studies" and has not

---

[2] Although not provided with the briefing on the instant Motion, the Court has also reviewed Mr. Koziol's Curriculum Vitae ("CV"), which was attached as an exhibit to Plaintiff's Expert Disclosures [#41], filed on December 16, 2011.

worked in law enforcement for fifteen years.  *Id.*  They contend that although when he worked in law enforcement he had some instructor roles, he never held a supervisory rank such as sergeant, lieutenant or captain.  *Id.*  Additionally, they argue that he could not identify a single complaint or lawsuit involving use of force issues against the Urbana, Illinois Police Department where he worked for fifteen years.  *Id.*  Finally, they assert that none of the four publications listed by Mr. Koziol on his CV pertain to law enforcement.  *Id.*

Plaintiff responds that Mr. Koziol "has repeatedly been qualified as an expert in law enforcement" in Colorado state and federal courts. [#71] at 4-5.  Plaintiff contends that Defendants' Motion fails to include the portions of Mr. Koziol's deposition transcript where he addresses his prior experience as a qualified expert.[3]  *Id.*  Plaintiff also claims that Defendants misrepresented Mr. Koziol's experience at the Urbana Police Department by failing to acknowledge that he was the Senior Criminal Investigator.  *Id.*  Finally, Plaintiff argues that Mr. Koziol acknowledged there were likely complaints of excessive force against the department or one of its members while he was there.  *Id.*  He simply could not remember specific cases.  *Id.*

Regarding formal education, Mr. Koziol stated in his deposition that he earned a two-year Associates Degree in general studies from Parkland Community College in Illinois in 1986. [#66-2] at 67-68.  He has no other academic degrees.  *Id.* at 68.  He also stated that in 1979 he was a student at the University of Illinois in Chicago for one year.  *Id.* at 77.

Mr. Koziol acknowledged in his deposition that of the four publications listed on his CV, none concerns law enforcement.  *Id.* at 93.  Rather, the publications pertain to motor

---

[3] Plaintiff fails to attach any portion of Mr. Koziol's deposition to the Response.  Thus, the Court has reviewed only those portions of the deposition attached to the Motion and the Reply.

vehicle topics including break dive test data, critical data sources in commercial vehicle crashes, trucks and trucking, and fleet safety. *Id.* at 93; [#41-1] at 40.

Likewise, the other categories on Mr. Koziol's CV reflect a heavy emphasis on accident reconstruction and other motor vehicle related topics. *Id.* at 36-40. For example under "Education and Registrations," Mr. Koziol lists numerous conferences and training seminars, most of which involve motor vehicle topics. *Id.* at 36-37. The police topics, the most recent of which was in 1996, relate to a number of different issues including investigation of sex crimes, blood pattern interpretation, intelligence seminar, gang seminar, homicide investigation and others. *Id.* Although the list fails to provide a summary of what was covered, nothing on the list appears to pertain directly to the use of force by law enforcement officers, the primary subject on which Mr. Koziol intends to testify in this case. The only arguably relevant courses or seminars listed are *Patrol Strategies and Tactics* in 1986, *Field Training Officer Certification* in 1985 and *Basic Law Enforcement* in 1983. Plaintiff, however, fails to explain in the Response how these, or any other seminars or classes listed on Mr. Koziol's CV, qualify him to testify as a law enforcement procedures and use of force expert in this case.

Plaintiff's primary emphasis in the Response is that Mr. Koziol "has repeatedly been qualified as an expert in law enforcement procedure" in Colorado courts. [#71] at 4. However, Mr. Koziol's "Trial, Hearing & Deposition Testimony List" which lists cases for which he was retained between 2007 to 2011, provides no description of the cases or the subject of his testimony. [#41-1] at 42. Moreover, Defendants challenge Plaintiff's assertion in their Reply that he has been repeatedly qualified as a law enforcement expert. Defendants asked Mr. Koziol in his deposition whether he was engaged as a law

enforcement expert in any of the cases on the list. [#72-1] at 99.  He initially responded that

he didn't know if "any of these were as a law enforcement expert." *Id.*  He then testified

that one was a use of force case involving the use of impact weapons and tasers, issues

not present in this case. *Id.* at 100.  He acknowledged, however, that although he gave a

deposition in that case, there was no trial testimony as the case settled before trial. *Id.* at

101.

Mr. Koziol was subsequently asked whether there were any times that he was

actually "offered and accepted for testimony as an expert in law enforcement use of force

at trial." [#72-1] at 186.  Mr. Koziol referred to a case from 2003 or 2004 in which he states

that he testified at trial. [#72-1] at 187.  He testified that it was a civil rights case and

identified it as Barry Floyd vs. City of Loveland, Colorado.  *Id.*  He then testified that this

was the only time that he was offered and recognized as an expert in any Colorado court

regarding the use of force by a police officer.  *Id.* at 190.

Upon conducting its own search of the Federal District Court of Colorado docket, the

Court located a case in which a plaintiff named Barry J. Floyd brought an action against the

City of Loveland, Colorado.  *See 99-cv-02102-CAB-PAC*.  The case was set to go to trial

on July 7, 2003, but the trial was vacated as a result of a settlement.  *See id.* at Doc. No.

136.  Although the limited information provided by the court docket cannot confirm that this

is the same matter for which Mr. Koziol claims he gave trial testimony, the time frame and

the parties are the same.[4]

---

[4] The Court's search also identified two other matters involving "John Koziol" in an expert witness capacity.  In the first, a District Court Judge recognized Mr. Koziol as an expert in the field of accident reconstruction and allowed him to render his opinion in that field.  *See Neiberger v. FedEx Ground Package System, Inc.,* No. 1:04-cv-00230-WDM-MEH, 2007 WL 4730631, at *1

Regardless, at best, Mr. Koziol has been recognized only once by a Colorado court as an expert on the subject of use of force by a police officer.  Plaintiff's assertion in the Response that he has "repeatedly been qualified" as an expert in law enforcement procedure is unsupported by Mr. Koziol's own testimony.

As set forth above, Plaintiff bears the burden of establishing that Mr. Koziol is qualified to testify as an expert in law enforcement procedure and use of force.  Based on the information presented, the Court finds that Plaintiff has fallen well short of meeting that burden.  Although certain items on Mr. Koziol's CV arguably relate to expertise in those fields, Plaintiff presents nothing to explain how.  The CV merely contains merely lists of various seminars, trainings and certifications, but Plaintiff provides no explanations of the content covered or how they establish expertise in the subjects at issue.  Admittedly, the Court has received only those portions of Mr. Koziol's deposition testimony that Defendants attached to the Motion and Reply.  Plaintiff, however, provided no additional deposition testimony in the Response despite claiming Defendants intentionally left relevant portions out.  For the foregoing reasons, the Court finds that Plaintiff has failed to show that Mr. Koziol is qualified by "knowledge, skill, experience, training, or education" to render an opinion on law enforcement procedure and the use of force.  *See* Fed. R. Evid. 702. Having determined that Mr. Koziol is not qualified to provide expert testimony on the subjects for which he has been identified as an expert, the Court need not address whether his opinions are reliable or relevant.  *See Yeley-Davis*, 632 F.3d at 684.

---

(D.Colo. Feb. 26, 2007).  In the second, a motion to exclude Mr. Koziol's testimony as an expert witness was granted, though the subject of his testimony is not addressed in the order.  *See Haynes v. City of Gunnison*, No. 1:00-cv-01119-JLK-BNB, 2002 WL 34382905, at *1 (D.Colo. March 4, 2002).

### III.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#66] is **GRANTED** and that Mr. Koziol

is excluded as an expert witness in this matter**.**

Dated: October 15, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge